We've got one last case on the argument calendar, and that is Bedrosian v. Commissioner of Internal Revenue. And I think now it's clear we've got 15 minutes, and there are only two sides. Right. I can do the math on that. May it please the Court, my name is Steve Mather. I'm appearing for the appellants, the Bedrosians, and Stone Canyon Partners in this case. And sitting at counsel table is Richard Hodge, also counsel for the Bedrosians. In this case, the Bedrosians are seeking an opportunity to have their day in court. And they need their day in court to challenge the timeliness and the merits of the Notice of Final Partnership Administrative Adjustment. The shorthand reference is the FPAW that was issued by the IRS to Stone Canyon Partners. The reason that we need to challenge this FPAW is that according to the interpretation of the government and most of the courts, essentially all of the substantive issues in this case must be raised in the case contesting the FPAW. In our case, the IRS has made repeated errors and has taken numerous inconsistent positions. And the result that they are arguing for and the result that was adopted by the tax court below is that the Bedrosians lose their day in court because of these IRS errors. Now, it's important to remember that the so-called TEFRA procedures and the non-TEFRA procedures or the other procedures or traditional deficiency procedures do not both apply in a single case. In our case, however, for at least the first year and a half of the audit of this matter, the IRS consistently applied the wrong procedure. They applied the non-TEFRA procedure. And even after the IRS discovered that they may be applying the wrong procedure, their answer wasn't to shift grounds and apply the correct procedures, the TEFRA procedures. Their answer was, well, let's just apply both procedures. We'll just go forward and keep issuing notices and keep having correspondence as if we're auditing under both procedures. And so every time prior to the issuance of the FPAW that the Bedrosians received any kind of a notice that might indicate that the IRS was following the TEFRA procedures, on that same day, the Bedrosians also got a notice that would indicate that they were not following the TEFRA procedures. So now we scroll forward to April of, well, I can't remember the year, but April. And the IRS, in pursuing these dual lines of mutually exclusive procedures, issued two notices. They issued the FPAW, which they now contend and everyone generally concedes was the correct notice. But in doing so, the one address that was indisputably the last and best address, residence address of the Bedrosians, was not used for the purpose of sending the FPAW. Just to make clear, what address was that? That is what we call the Roca Drive address. That's the one where the Bedrosians had said that's insecure and please don't send them there? That's correct. Their agent did tell the respondent or the government's agent that that was an insecure address a few days before the FPAW was mailed. And where was this FPAW mailed? The FPAW was mailed to, I believe, three other addresses. So it was not mailed to the address where they'd said please don't send it there, and it was mailed to three other addresses? That's correct. And it's your contention that none of those three ever made it to the Bedrosians? That's right. Goodness. That's odd. Where did they get those other three addresses? Well, one of the addresses was their original residence address when the audit commenced. Everybody knew that was no longer a good address. They were no longer living there? They were no longer living there. And these were returned, right? One set at least were returned, according to the government. The Stone Canyon, I believe the record is not clear on whether those were returned or not, but it is clear that that wasn't their address and everybody knew it. And two Stone Canyon addresses, north and south. Yeah, well, there was a Cannon address that was a prior mail delivery service, and that was used by the government also, and those were definitely returned because it was a P.O. Box type place and it had gone out of business and they were not accepting mail, and those came back to the government. So just so I can be clear, okay, give me the fate of the three addresses sort of one by one. Okay. The addresses that were sent out. I'm sorry. The first one was Stone Canyon Drive, which was the former residence address that was, everybody knew the taxpayers weren't there. And that was returned? I'm not sure if that was returned. We don't know. I don't believe the record is clear on that. Okay. The second one? The second one is a Cannon Drive address, which was a mail drop facility, and that was an address that had been provided to the government at one point as a mail drop facility. That mail drop closed. The IRS did mail to that anyway because it was an address in the file, which is kind of the standard that we always applied, and those came back. That was returned? Yes. And the third one? And then the third one was Beverly Glen, which was the address that the Bedrosian's accountant had given to the IRS as being the new address because they were concerned about the security of the mail at the residence. And that was the phone call from Ms. Olson that said we want this one? That's correct. So it was sent there, and what happened to that one? It was sent there, and they were not received there. What we believe happened in that instance is that they were in the process of setting up that as the new mail drop, and it happened so close in time to the point at which that address was provided to the government that it hadn't actually been set up yet, and so those were not received either. So what happens, as I understand it then, is that there's one address, the Roker Drive, that the IRS was told not to send it there, and they didn't. They sent it to two others that are, for different reasons, not good addresses, one because they don't live there anymore and the other one because the post office box system or whatever it is is closed up, and the third, they sent it where they were told to send it. Correct. And you're saying that the IRS nonetheless fouled up by sending it to the place where they were told to send it? Well, the IRS in this case makes a great deal over the procedure for how you properly inform them of a new address, and in this case, that procedure was not followed. In the first instance, the accountant was not authorized to represent the partnership or the Bedrosians in the partnership proceeding. So one of the fallouts of the government using a wrong process. I would urge you not to use all your time on discussions of the IRS did what they were told to do. That's a violation of due process. Okay. You may have better arguments. All right. Well, it does, I mean, the problem in this case is the critical nature of the FPAW, because historically in the deficiency proceedings, you always, if you missed your opportunity to go to the tax court in response to the notice of deficiency, you always had the fallback of contesting this in district court in a refund forum. That does not exist with respect to the FPAW. So if the Bedrosians didn't get the FPAW, and we say the Bedrosians didn't get the FPAW because the IRS didn't send it to the right place, but they yet later did send more notices to the Roka Drive address, seemingly disregarding the advice of the accountant in those notices, but they sent those later notices to the Roka Drive address because it was the last known address and they knew that they were required to do that, and that was the address that they had consistently used based on written notification throughout the partnership proceeding. So ‑‑ I encourage you to take Judge Clifton's advice. All right. Now, so having the opportunity to participate in an FPAW proceeding is the be-all and end-all for us. So either the FPAW was invalid, which we've said, you know, argued on behalf of the issue of the incorrect address, or we have to be allowed because of the confusing notices that have been issued by the IRS to amend our petition in the case where we did file a timely contest of the notice of deficiency to raise the challenge to the FPAW. Now, on that case, there's a question about our jurisdiction because we are told that there's a piece left to the tax court's consideration of the 2005 NOD. What do you have to say to that? Well, what I have to say to that is that the tax court did not issue a clear final decision terminating that case, but the consequence of the court's ruling in that case struck every issue as being improperly included in the notice of deficiency that could have given rise to a deficiency in the first place. So the consequence of the court's ruling is it said we are jurisdictionally, as a result of our jurisdiction or our limited jurisdiction, we have to take out these six issues. When you take out these six issues, there is no deficiency. And so by definition, since there was, when you eliminate the issues over which the court lacked jurisdiction, there was no deficiency for a notice of deficiency to be based on. But I'm not sure that addresses the question as to whether we have a final judgment. I mean, that's just a straight jurisdictional requirement for us. Is there an issue remaining to be determined in that case in front of the tax court? There is no. In fact, in our opinion, there is no issue that remains that can be correctly decided by the tax court. That's not quite what I asked. I know. The tax court has no jurisdiction over any issue remaining in the case. That is our position. But has it issued a final judgment dismissing everything? It has not issued a final decision dismissing everything, but the consequence of their order deprived them of jurisdiction. On the issues that you're trying to raise? On every issue in that case. Well, in that case, because frankly I confess I don't understand, but there's supposed to be some individual level deductions having to do with legal fees or something. That's the piece, as I read the tax court decision, it was explicit in saying the motion to dismiss for lack of jurisdiction to be granted in part and denied in part. So I'm trying to figure out, okay, what's the denied in part, and as best I can figure it has to do with legal and accounting fees and the like, and something must be remaining as far as the tax court is concerned with that piece. Well, first off, the issues that were dismissed with respect to the 1999 tax year were all of the issues. So with respect to 1999, at least the consequence of the court's ruling is that every issue that existed for 1999 is gone. With respect to the 2000 year, there was one issue that the court said, well, this is not one that at least is the type of issue that we can't consider in a notice of deficiency. And that's a half a million dollars? That's a half a million dollars legal fees. But under the facts of this case, when that is the only issue in the case, it still does not result in a deficiency. So what could the IRS would not have been legally allowed to issue a notice of deficiency since there was no deficiency, knowing what we know as a result of the court's ruling of the issues that were properly includable in a notice of deficiency. So even if you include this one issue, there is no deficiency. And by law, there can't be a notice of deficiency. And by law, without a notice of deficiency, there can't be a court decision. I think I know the answer to this, and so I'll go through it quickly. But there are various ways to avoid the final judgment rule and nonetheless get to us. One of them is a certification under Rule 54, which I think you do not have. That's correct. And you don't have a statutory certification for interlocutory appeal. That's correct. And I don't see how you fit under the collateral order doctrine. We had a conference call, and I know that the government objects because this was outside of the record. And I had a conference call with the tax court judge, which is kind of how things work in the tax court quite frequently. And the tax court judge herself is the one that recommended this is the course of action because of the circumstance that we found ourselves in. I had originally set up the call for the purpose of seeing if we could file a motion for an interlocutory appeal, and she said, no, no, you can't do that because there's nothing left in this case. Outside us? There's nothing left in this case. My favorite movie line is from Animal House, and I can't say it the way they say it in the movie, but the gist is you screwed up. You trusted us. Yeah. Well, maybe that's so. But, I mean, more importantly in the context of our cases, I think we screwed up and we trusted the government because the government repeatedly and continually issued the wrong notice under the wrong procedure. And we contested them. And sent it to a place that you told them to send it. We continued to contest it. Yeah, they did send that one. They sent the wrong notice to the right address, but they didn't send the right notice to the right address. And they are here attempting to capitalize that. There's one last issue you haven't gotten to, and that's the question of the money that you did send in that was applied in your view in the wrong manner. Yes. Do you want to address that? I'm in my last minute. That's not a huge issue for us. We have another forum that we can contest at least the merits of that case in. So I just, the real issue there is that the government is changing the facts on us. We sent the payment in under a set of facts that were known to us at the time. And the government said, oh, no, we're withdrawing that notice so that fact doesn't exist. And I don't know how we can be faulted for following the procedures that applied based on the facts that existed at the time. Why don't we hear from the government? We'll give you a chance to respond. May it please the Court. My name is Arthur Catterall. I'm an attorney with the Justice Department representing the Commissioner in these appeals. First to answer a couple of things left unanswered or left hanging. The only partnership notice or FPA that was returned undeliverable is the one to the North Cannon Drive address. There were two sent to the North Cannon Drive address. They were returned undeliverable. There were 12 other notices sent to these three other addresses. Did not come back undeliverable. And counsel asks, you know, why does the IRS sort of play both sides of this procedural game? Why would they purport to follow the partnership procedures and sort of at the same time take this protective role of following the individual procedures? And the short answer is because there are lots of very good lawyers like Mr. Mather who, you know, will basically do the same thing in defense. And that is, you know, if the IRS comes in and uses the partnership procedures, somebody will say, oh, no, that's not right. You should have used the individual procedures and vice versa. So the IRS basically was, you know, taking a protective procedural role. And that makes sense to me. The problem I have, I look at it now. When the taxpayers challenged, I mean, this FPA, I take it as an understood term. I was unfamiliar with the acronym. So, okay, FPA is easier than the letters. Right. That was sent out and it was about a week later that the 2005 NOD was sent out. Right. And receipt of that is acknowledged by the taxpayer. When they challenged that, I'm going to use generic terms because I don't know that I have the language properly to people that really know the field. And I confess I don't. When they challenged that, a challenge to the FPA would have been timely. Correct. In responding to the 2005 NOD, they were responding in a context where the government was being cautious by doing multiple somewhat inconsistent things. And I don't know what's wrong with the taxpayer saying, having received the 2005 NOD, well, this must be it. Okay. I'm planting my flag challenge, only to discover later the government says, this is where I plan to use my animal house line. Oh, you screwed up. You trusted us because you believed that 2005 NOD meant something. Oh, it didn't. The FPA is what counted and you didn't challenge that, so you're out of luck. That seems very bizarre to me. I will grant you that these procedures are very bizarre. But I think the important thing to note is the taxpayer's representative knew the FPA was coming. The IRS agent told her an FPA is coming. Would they have anything to gain by responding to the issue in the context of the 2005 NOD? Because their CPA did not understand the rules. So that doesn't tell me why we should. I mean, nobody here is trying to get to the mayor, as I understand that. But why shouldn't the procedure they followed in apparent good faith and reliance upon a notice issued by the government suffice to keep the door open? And the vehicle I can think of, and I don't know if it's the best vehicle, but this isn't my territory, why shouldn't they be allowed to amend their response in order to reach the issues that everybody identifies as the real issues if we're able to get there? And they tried to do that. And they tried to do that. And the problem is you run smack dab into tax court rule 41A, which basically says we will not allow an amendment to a petition if the effect of that amendment is to confer jurisdiction on this court over a matter that we wouldn't have had jurisdiction over under your original petition, and if the time for making your challenge or, you know, for challenging what you want to challenge in your amendment, if the time for that filing has passed. Why can't they challenge? I mean, I am not a tax lawyer, and I expect never will be one. So these terms are, I'm afraid, a little unfamiliar to me. But I don't get it as to why they can't challenge the NOD. The first NOD that was sent. The one they in fact sought to challenge. Why can't they challenge? Because as the tax court determined, all of the adjustments in that individual notice of deficiency stem from this partnership except for one, and that's the attorney's fees. They tried to deduct the promoter fee of half a million dollars. And the way the TEFRA rules work is when adjustments proceed from a partnership, that's where you have to challenge the adjustments. And is it outside of the jurisdiction of the tax court to address these challenges in a challenge to an NOD? Absolutely. Even if the IRS waives any objection? I don't believe the IRS can waive. I mean, I don't think jurisdiction is waivable. Well, sometimes it is. Jurisdiction is such a protean term, protean, P-R-O-T-E-A-N, that depends on what kind of jurisdiction we're talking about. So I'm asking you, what if the IRS says, you know, given that we fouled up here, you may or may not want to concede that, but given that we maybe misled them into sending out two different notices, one of which they couldn't challenge, but they took the bait and they challenged that one, what if the IRS says, you know, it's just not unfair to the taxpayer to avoid the substantive challenge by insisting upon they challenge the other one because they, you know, they bid at the fly instead of the worm or whatever it is. What if the IRS says that in the tax court? And the IRS says, you know, we really do want to get to the merits of this. We're not trying to sort of play procedural and trick games and so on. What happens? That's a good question. Whether the tax court would, I mean, you're basically asking the tax court to disregard the plain language of their own rules. Lots of rules are made for the benefit of one party or the other, and the party can waive them. I can waive an objection to personal jurisdiction. The list of things I can waive as a litigant is longer than my arm. Yeah. And I guess my response to that is, I mean, are you wondering whether the IRS would be willing to, or are you just sort of posing a hypothetical? Well, it's going to be both questions are kind of on the table from there. The reason I ask that is because this is ‑‑ I mean, it's a little bit hard to feel sorry for these taxpayers. I mean, they spend half a million dollars to have somebody manipulate the partnership tax rules. Well, I may have great hope they lose, but why shouldn't they be allowed to lose on the merits rather than on ‑‑ Well, they invoked this whole mess. I mean, you know, they went to Jenkins and Gilchrist, paid them a half a million. I hear all that. But what I'm saying is they invoked these procedural rules. You know, they set up this 30‑day partnership. They used two wholly owned entities as the partners. That's what put them in TEFRA. There's a small partnership exception. They don't qualify for it because they put these wholly owned entities as partners. I'm sure it seemed like a good idea at the time, and they've come to regret it. But that all begs the question, because we're not in a position really to rule on the merits of the dispute. I just want someone to be able to rule on the merits of the dispute. And you know at least one and possibly two of the judges are interested in that direction. And we're looking for a way to do that while doing as little damage as possible to the structure of law, if we can do it consistently with law. I don't hear any suggestions from you that suggest that's possible. Well, I doubt very seriously that the IRS would go along with this. Because of the type of tax shelter involved here, this is a really abusive scheme that the IRS has been fighting and is still fighting in the courts. There's not a whole lot of sympathy out there for people who bought this thing. So I kind of doubt the IRS would go along. And particularly because, I mean, okay, mistakes were made on both sides. But as you all mentioned, I mean, we followed or the IRS followed the CPA's instructions. Don't send it to our house. Send it to this private mailbox. You know. So the view from our perspective, to the extent that we are pronouncing something that may wind up being law applicable to another case, we have to assume there's a taxpayer that has a completely legitimate issue. All the other facts are the same, be it the mailing of notices, the addresses used, the response to the 2005 NOD. If you have a taxpayer with a valid case, you have a powerful incentive to be able to reach the merits. Well, that's where we are. I mean, I understand, and I had heard something, I know nothing of the details, but I'd heard something about the Johnson and Gilchrist tax. I mean, they made news amongst lawyers, so wave goodbye to them. So maybe I understand the attitude to the service in this particular case, but the problem posed in terms of responding either to the multiple addresses used or to the multiple notices sent out, the problem was one that could face a taxpayer with a very legitimate argument. And that's the situation that we have to deal with as well. Now, okay, I've got in the back of my head, as I had in the back of my head when I came in here, I don't think much of this tax shelter perhaps, but I've also got the valid taxpayer argument. And what we're given is a situation where we're sort of invited to make a hash of the rules one way or another in order to achieve ultimate justice, and we have to decide if that's something appropriate in this case. Now, and that's why I'm, this really is meant to be a hostile question. Is there an undamaging way to be able to permit the merits to be addressed? And if the answer turns out to be no, then we go back and examine it and try to figure that out for ourselves. Well, perhaps, and again, I mean, certainly this court does not have to decide this issue about whether they should be allowed to amend their petition because that appeal is premature, as you all have discussed. So, you know, that case should be remanded, the appeal dismissed, the case remanded to the tax court to address the attorney fee issue. You know, maybe the tax court would be open to it. I've struggled with that, too, and that raises a question that reminds me of something. What happens then? I mean, we have this set of cases which were consolidated for appeal because they're all really about the same thing. I mean, there does appear to be a jurisdictional defect in that case. You know which one I'm talking about. Yes. I just lost track of the numbers. Yes. And so it does appear that it's appropriate to conclude we don't have jurisdiction. That case needs to be remanded to the tax court. Do we have any sense of how much time it will take for the tax court to resolve whatever issue is still on the table? I mean, I don't think the issue is all that complicated. It's just whether, you know, the promoter fee you pay for a tax shelter, is that deductible when, you know, when the tax shelter has been disallowed? So it could be a relatively short period of time. I say that, but, you know. I understand. This is minding. I'm just trying to. It's not a real complex issue, I don't think, no. I mean, it doesn't – if this package is going to come back again, we don't do our colleagues on the court any favor by saying, oh, it's not our problem anymore. You deal with it. So I'm just trying to gauge what we might be facing here. Because at some time, that case will be final and will presumably come back with all the same issues attached to it. Right. And, you know, and again, in my mind, it comes down to – I mean, I know you all are suggesting that perhaps the IRS should waive, you know, any objection to amending the petition. And I – A, I don't know if the IRS would be willing to do that. B, I don't know if the tax court, you know, if they would be receptive to that and say, okay, we – notwithstanding what our rules say, we're going to, you know, we're going to make an exception here. I – I just don't know if that's – I don't know. Yeah. Although, this may not speak to the rule question or the waivability question. If your case on the merits is as strong as you say it is, you're going to win on the merits. There's an if in there. There is an if in there. Yes. Yes. It is a complicated tax shelter. And as you say, it's being fought all over. So I appreciate the desire not to have to face the issues any more than the service has to face them. I also appreciate the concern of taxpayers that they ought to have a day in court someplace. And that's the problem. Yeah. And, you know, and part of that problem, as Mr. Mather indicated, is the way these procedures work. Normally, you know, on the individual level, if you ignore a notice of deficiency, you can pay it and file for a refund. Not so with the partnership procedures. You know, if an FPOD defaults, is not challenged, you know, that's the end of the road for the partnership adjustments. Which is what makes this unusually harsh, because the challenge was plainly there and filed. It just turns out to have been filed in the wrong column. I think that's an accurate assessment. A column which the government invited because it sent out that 2005 NOD. And I guess I would just respond that these people were sophisticated enough to spend a half a million dollars to buy this thing. They should have known the procedural rules. You know, caveat emptor. Well, I'm not sure. Doctors spend half a million dollars on investments all the time. Doctors are the biggest suckers in the world. I'm not saying this is not a reference to these individual taxpayers. Okay. I appreciate the opportunity to bring Animal House to the night, sir. That's a well-placed quotation. Okay. Thank you. Okay. Mr. Mather. Yes. Thank you. I think there's a couple of points that Bear mentioned with respect to this last discussion. Number one, it appears to me quite obvious, as I think almost admitted by Mr. Catterall, that the government does want to deprive us of our day in court. And they have a specific goal of doing that. Well, they've been trying very hard to do that. Yes. And you want to plead limitations issues against the government, too. So nobody in this room wants to get to the merits. That's true. But more appropriately, with respect to the wrong petition that was filed in this case, that petition was filed by the same person that would have filed the petition, the correct petition. It challenged the exact same adjustments as the correct petition would have. And it would have been filed at the same time. And so we, you know, the government says, well, literally under tax court rule 41A, you can't comply. But, you know, it was on time by the right person challenging the right amount. So I think it's far from clear. Obviously, the tax court had its view that, you know, since we attached the wrong FPAW to the notice and put the wrong caption on the case or the wrong notice of deficiency, that we're out. But I think it's certainly an easy interpretation. That may be for the tax court to deal with on remand on the order that you think is final but we think is not. Okay. That may turn out to save you. Who knows? Okay. Secondly. Oh, I'm sorry. You had someplace else to go with the merits. Where would you go next with the merits? We have nowhere else to go on the merits. We have nowhere to go on the merits. We have nowhere to go with respect to the question of whether the statute of limitations was on time. After you paid the tax, can you go to the district court? No. Okay. Because it's an FPAW, because it's partnership items, which we no longer contest, then once you've missed your tax court window, you're done. Well, when you told us that the payment, the 2006 NOD case, where there's the dispute about how to treat the money that your client paid over, what I thought I heard in response was something, well, that's not really important to us because we can get there some other way. Maybe I misunderstood. Whatever issues we could contest in the tax court in that case, we can in that case. But we're so limited by the time we get to that case, by the matters that are considered to be final because of the conclusion of the FPAW, that there's hardly anything left in that case. We're basically fighting over computations at that point. And that's all that we get. That's the only day in court that we get. We don't get to contest the merits. We don't get to contest the statute of limitations. Now, secondly, the last point that I'd like to make is not only did the government send the dual confusing notices, and we say sent the one to the wrong place, is that in the case involving the 2005 NOD, not only did we file the petition on time, but the government answered that case three weeks before the deadline for us to have filed the petition with respect to the FPAW. We have 150 days to file with respect to the FPAW, 90 days with respect to the notice of deficiency. So they answered that case and still didn't tell us, oh, sorry, that's the wrong notice. You better look for another FPAW. And that may be an argument that the tax court would be willing to entertain, at least listen to, if we remand the cases for which we do not have a final judgment. Okay. Thank you. Okay. Thank both sides for their argument. Bedrosian v. Commission of Internal Revenue Service is now submitted for decision. And that concludes our argument session for this morning. We are adjourned.
judges: Hall, Fletcher W. , Clifton